Judge Simpson
delivered the opinion of the Court.
The principal question in this case arises upon the writing executed by Coates, and Carney his surety, for the hire of a female slave, during the year 1853, which writing contains a covenant for the return of the slave at the end of the year.
It appears that during the year, Coates caused the death of the slave by inhuman treatment, and having immediately thereafter absconded, this action was instituted for the purpose of attaching the property of Carney, the surety, who, as alleged in the petition, was about to dispose of his property with the fraudulent intention of evading his liability for the value of the slave, and the hire.
The slave belonged to Lucy Walden, and had been hired by her to W. C. Thompson and R. W. Payne, for the year 1853, and they hired her to Coates, taking from him the writing referred to, with Carney as his surety, which writing was executed to Payne alone. The action' was brought by a petition in equity, in the names of Walden, Thompson and Payne as plaintiffs.
On the part of Carney it has been argued, that it was not contemplated by the parties, when the contract for hiring was entered into, that he should be liable for the value of the slave in the event that his principal failed to return her according to the stipulation in the contract; and if he be held responsible, that it will in effect convert the writing into a contract of insurance, which was not intended by the parties to it when it was executed ; and the cases of Young vs. Bruce, 5 Litt., 324, and Singleton vs. Carroll, &c., 6 J. J. Marsh., 527, have been referred to, as sustaining the doctrine contended for.
But these cases only decide the principle, that such a covenant does not impose upon the covenantor an obligation to return the slave at the end of the term of hiring, in every possible state of case; but that if he, without any fault on his part, be rendered un *396 able to comply with the covenant, by the death of the slave, or by the fact that the slave ran away and could not be recaptured, although reasonable diligence had been used to effect that object,u then he will not be responsible for a failure to comply with it.
1. Though the hirer of a slave will not be responsible for the value of a slave which he has bound himself to return at the expiration of the term of hiring, when he is prevented from doing so by the act of God, the slave, or the owner, yet he is responsible when his inability to return the slave arises from his own illegal and wrong ful act.
2. The liability of the surety and the principal isthesame; when the principal is bound the surety is also bound; the wrongful act of the principal will not exonerate the surety.
Can any obligor, however, rely upon his own wrongful act as an excuse for failing to fulfill his undertaking? The intervention of the act of God, or of the slave, or of the owner, which prevents him from complying with it, will excuse a non-performance of the covenant. But he is not entitled to any such-exemption from liability, if he be rendered unable w comply with it by his own illegal and wrongful act.
The liability of the principal and the surety, upon the writing, is precisely the same. They are joint covenantors, equally bound for tbe performance of the covenant, and neither can exonerate himself from liability, on the ground that the wrongful act of the other has rendered a performance by him impossible. We entertain no doubt, therefore, of the liability of Carney upon the written contract, for the failure to return the slave.
An objection has been made to the proceedings in this ease, on the ground that there is a misjoinder of parties as well as of causes of action in the plaintiffs’ petition. It is contended in support of this objection, that so far as the action is founded on the written covenant, the owner of the slave is not a proper party ; and that her cause of action against Coates for the value of the slave, is in tort, and cannot be joined with the other causes of action set forth -in the petition, inasmuch as they are based upon contract.
This objection is founded on a misconception of the cause of action asserted by the petition. It sets forth a claim for the value and the hire of the slave on the written contract alone. The death of the slave, and that it resulted from the illegal conduct of one of the obligors, is alleged, to show their liability on their covenant for the value of the slave. The *397 action was an equitable proceeding; it was commenced before the cause of action had accrued, and its object was to prevent the defendants from making a fraudulent disposition of their property, before a breach of their covenant would occur, by a failure to pay the hire and return the slave at the end of the year. And the death of the slave, and the cause of it, were alleged to show that a breach of the covenant was inevitable, and consequently that the obligors were liable for the value of the slave.
3. When thii object of a suit in chancery is to restrain the fraudulent disposition of property to avoid the payment of a legal liability which is inevi^je*(asformturn a slave the ™t'of *e hñfpr,) the chancellor has jurisdiction to the^ho^oontroversy. And having separate [á^may^nite in a petition in guit^fo™ Sth® benefit of one party.
*397 The bailee for hire is bound for ordinary diligence and care in regard to the health and safety of the slave, and is under an implied obligation to return the slave when the time of hiring has ended. (Ewing & Conner vs. Gist, 2 B. Monroe, 465 ; Swigert, &c. vs. Graham,7 B. Monroe, 663.)
He cannot relieve himself from these obligations by hiring the slave to another person. Such hiring will be at his peril, and he will be responsible to the owner for any injury to the slave, or to the rights of the owner, which may result from the illegal conduct of the pérson to whom he has hired the slave.
In this case Thompson and Payne were liable to Lucy Walden for the value of the slave, inasmuch as Coates, to whom they had hired her, had caused her death by bad treatment. Thompson had a right to join in the suit as a plaintiff, because although the writing was executed to Payne alone, it was for their joint benefit. The action was brought by them to recover the value of the slave and the hire, for both of which the defendants were liable on their contract. The plaintiffs Thompson and Payne, being liable to Lucy Walden for the value of the slave, . , . she was made a piamtitt m the action with them, because to that extent the action was brought by them to obtain indemnity for their liability to her, and was intended by them to inure to her benefit. If, instead of making her a co-plaintiff with them, they had merely stated that the action, to the extent of the claim for the value of the slave, was prosecuted for *398 her benefit, there would have been no cause for the present objection. And as the facts alleged evince the nature of her right, and the extent of the liability of the other plaintiffs to her, and the action is evidently founded on the written contract alone, she should be regarded as having been joined as one of the plaintiffs, only because it was brought by the other plaintiffs for her benefit, so far at least as the value of the slave was sought to be recovered in it.— Viewing- it in this light, it was an action by Thompson and Payne, on the written contract, for the hire and the value of the slave, and there was no misjoinder either of causes of action or of plaintiffs.
Pettit has no right to complain of the judgment against him. He bought the property of Carney alter the attachment had been issued, and no doubt had the price of it in his hands at the time the process was served upon him. His answer is evasive and unsatisfactory; and he failed to answer the amended petition, in which it was expressly alleged that he had admitted the purchase of the property with a knowledge that the attachment had issued, and stated that he had not paid for it, and would not do so until this suit was determined.
Wherefore the judgment is affirmed.